ARMBRUSTER, Appellant,

v.

WEST UNITY POLICE DEPARTMENT et al., Appellees.

[Cite as *Armbruster v. W. Unity Police Dept.* (1998), 127 Ohio App.3d 478.]

Court of Appeals of Ohio,
Sixth District, Williams County.

No. WM–97–023.

Decided May 1, 1998.

*John S. Shaffer,* for appellant.

*Joan C. Szuberla* and *James P. Silk, Jr.,* for appellees.

MELVIN L. RESNICK, Judge.

Pursuant to Sixth Dist.Loc.App.R. 12(C), this case is assigned to the court's accelerated docket.

This an appeal from a grant of summary judgment by the Williams County Court of Common Pleas in favor of defendants-appellees, the West Unity Police Department and the village of West Unity. Appellant, Marcella Armbruster, appeals that judgment and sets forth two assignments of error. See Appendix A.

The facts of this case are fully set forth in the well-reasoned opinion of the Honorable Robert V. Franklin. We hereby adopt those facts as our own. See Appendix B.

Both of appellant's assignments of error address the trial court's determination that appellees were immune from civil liability under R.C. 2744.02(A)(1). Appellant argues that the court should have considered the "exceptions" to immunity found in R.C. 2744.03.

Upon a careful consideration of appellant's assignments of error and the relevant case law, a thorough review of the record, and the application of the pertinent standard of review, this court finds that the trial court set forth the correct law controlling the disposition of this case, properly applied that law, and did not err in granting appellees' motion for summary judgment as a matter of law. That is, under the facts of this case, blanket immunity is provided to appellees pursuant to R.C. 2744.02(A)(1). None of the exceptions to immunity listed in R.C. 2744.02(B) is applicable. See *Burgess v. Doe* (1996), 116 Ohio App.3d 61, 686 N.E.2d 1141. Therefore, the defenses and immunities provided to

a political subdivision and its employees under R.C. 2744.03 never come into play. *Farra v. Dayton* (1989), 62 Ohio App.3d 487, 497, 576 N.E.2d 807, 813–814.

Appellant's first and second assignments of error are found not well taken. The judgment of the Williams County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal.

*Judgment affirmed.*

GLASSER and SHERCK, JJ., concur.

## APPENDIX A

The assignments of error are:

"Ohio Revised Code Section 2744.02(B), by incorporating Ohio Revised Code Section 2744.03, provides a qualified immunity to political subdivisions."

"The village of West Unity was vicariously liable, since the acts and/or omissions of its employees were in bad faith and in a reckless manner."

## APPENDIX B

Marcella Armbruster, Plaintiff,

v.

Allen Word, etc., et al., Defendants.

Case No. 95–CI–000084

OPINION AND JUDGMENT ENTRY

Decided Aug. 4, 1997

ROBERT V. FRANKLIN, Judge.

This case alleging various search-related abuses by police officers is before the court on a motion for summary judgment filed by the two remaining defendants in this action, the West Unity Police Department ("the department") and the village of West Unity ("the village").[1] Upon review of the pleadings, memoranda of the parties, evidence, and applicable law, the court finds that the motion should be granted.

---

**1.** The plaintiff dismissed the other two defendants in this action, Allen Word and the Williams County Commissioners, on December 21, 1995.

## I. FACTS

On or about June 18, 1994, police officers from the department and other area law enforcement agencies executed a search warrant on the residence of plaintiff Marcella Armbruster and her husband John Armbruster. A local municipal court judge, Judge Kiacz, issued the warrant based on an affidavit prepared by department Sergeant Beck.

Earlier that day, department Officer Mark Hausch, while with Sergeant Beck, was notified by the department's dispatcher that an anonymous phone caller had told the department about marijuana growing on the Armbrusters' residence behind a shed. The two officers drove separately to the Armbrusters' property. Sergeant Beck arrived first. He found Mr. and Mrs. Armbruster sitting on their porch. Sergeant Beck told the couple about the report of marijuana growing on their property. He asked for their consent to search. They refused. Officer Hausch arrived shortly thereafter. Surveillance began on the Armbrusters' residence and outbuildings from Officer Hausch's vehicle parked nearby. Through a set of binoculars, the officers observed what they believed to be marijuana growing behind a shed at the Armbrusters'. Sergeant Beck left the scene to obtain a search warrant, leaving Officer Hausch behind to maintain surveillance.

Sergeant Beck prepared an affidavit noting the anonymous phone report and the apparent marijuana plants growing in plain view behind the Armbrusters' outbuilding. Judge Kiacz then issued a warrant permitting the search of the entire Armbruster residence.

Upon Sergeant Beck's return, several law enforcement officers, aided by a canine unit, conducted a search. The dog "hit" in an area behind the shed where, apparently, plants had recently been uprooted and removed. Although the officers believed that they smelled burnt marijuana in one of the bedrooms while searching the house, they found no marijuana anywhere on the premises. After the unsuccessful search, the officers left without charging the Armbrusters. Throughout the search, the officers required the Armbrusters to stay out of the house. The couple remained on the porch except for one brief period when Mr. Armbruster went into the house; Sergeant Beck ordered him out of the house when the officers realized that Mr. Armbruster was inside.

Mrs. Armbruster filed this action against the village and the department,[2] asserting the following claims: (1) abuse of process, (2) malicious prosecution, (3) defamation, and (4) false imprisonment. The village and the department have moved for summary judgment, first arguing that R.C. Chapter 2744 provides

---

2. She did not join any of the department's individual officers in this action.

them with immunity from liability for Mrs. Armbruster's claims. Second, the defendants assert that they are entitled to summary judgment on each of the four claims as a matter of law.

## II. MOTION FOR SUMMARY JUDGMENT STANDARD

In *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47, the Supreme Court of Ohio set forth the requirements for granting a Civ.R. 56 motion for summary judgment:

"The appositeness of rendering a summary judgment hinges upon the tripartite demonstration: (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor.

"The burden of showing that no genuine issue exists as to any material fact falls upon the moving party in requesting a summary judgment."

A party who claims to be entitled to summary judgment on the grounds that a nonmovant cannot prove its case bears the initial burden of (1) specifically identifying the basis of its motion and (2) identifying those portions of the record that demonstrate the absence of a genuine issue of material fact regarding an essential element of the nonmovant's case. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264, 273–274; see, also, *Dresher*, 75 Ohio St.3d at 299, 662 N.E.2d at 277–278 (Pfeifer, J., concurring in judgment only). The movant satisfies this burden by calling attention to some competent summary judgment evidence of the type listed in Civ.R. 56(C), affirmatively demonstrating that the nonmovant has no evidence to support his or her claims. *Id.* at 293, 299, 662 N.E.2d at 273–274, 277–278. Once the movant has satisfied this initial burden, the burden shifts to the nonmovant to set forth specific facts, in the manner prescribed by Civ.R. 56(E), indicating that a genuine issue of material fact exists for trial. *Id.* at 293, 662 N.E.2d at 273–274. Accord *Vahila v. Hall* (1997), 77 Ohio St.3d 421, 429–430, 674 N.E.2d 1164, 1170–1172; *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 114–115, 526 N.E.2d 798, 800–802.

## III. DISCUSSION

The first issue is whether the village and the department are immune from liability in this matter by operation of R.C. Chapter 2744, the Political Subdivision Tort Liability Act. There is no dispute that the village is a "political subdivision" as defined by R.C. 2744.01(F). See *Honeywell v. Woodring* (Sept. 4, 1992), Fulton App. No. 91FU000008, unreported, 1992 WL 213100 (the village of Metamora, Fulton County, Ohio, is a municipal corporation covered by the

statute). It is also clear that a political subdivision undertakes a "governmental function," as defined by R.C. 2744.01(C)(2)(a), when it provides law enforcement services. See *Twine v. Franklin Cty. Sheriff's Dept.* (1990), 68 Ohio App.3d 51, 54–55, 587 N.E.2d 411, 413–414 (a law enforcement service is a governmental function when it is not a function customarily engaged in by nongovernmental persons). Thus, the court finds that the village and the department are entities covered by R.C. Chapter 2744.

R.C. Chapter 2744 creates a three-tier analysis for determining whether a political subdivision is entitled to immunity. *Sartori v. Columbus Bd. of Edn.* (Jan. 24, 1991), Franklin App. No. 90AP–845, unreported, 1991 WL 7265. Under the first tier, R.C. 2744.02(A)(1) provides a political subdivision with blanket immunity from tort liability arising out of an act or omission by the entity or its agent if the act or omission occurs in the course of a "governmental" or "proprietary" function. R.C. 2744.02(A)(1); *Koch v. Avon Bd. of Edn.* (1989), 64 Ohio App.3d 78, 80, 580 N.E.2d 809, 811. Under the second tier, R.C. 2744.02(B) lists five exceptions to the general immunity granted under the first tier: any act or omission of the entity or its agent falling within one of these five listed exceptions subjects the entity to liability.[3] *Amborski v. Toledo* (1990), 67 Ohio App.3d 47, 50, 585 N.E.2d 974, 976. Under the third tier, R.C. 2744.03 makes available further defenses and immunities that the subdivision may assert if it is subject to liability under the second tier. *Minor v. Hamilton* (June 7, 1993), Butler App. No. CA92–08–157, unreported, 1993 WL 192919.

In this case, the village and the department assert that they are entitled to summary judgment as a matter of law because the alleged wrongdoing of their agent/officers (*i.e.*, abuse of process, malicious prosecution, defamation, and false imprisonment) do not fall within any one of the five exceptions to immunity listed in R.C. 2744.02(B).[4]

---

**3.** In general terms, the exceptions set forth in R.C. 2744.02(B) are (1) negligent operation of a motor vehicle, (2) negligent conduct of employees while carrying out a "proprietary function," (3) failure to keep roads and sidewalks free from nuisance, (4) negligently caused injury or loss occurring on the grounds of certain government properties, and (5) any other situation in which liability is expressly imposed by the Revised Code.

**4.** The elements of these causes of action are as follows:

1. "*[A]buse* of process arises when one *maliciously misuses legal process* to accomplish some purpose not warranted by law." (Emphasis added.) *Clermont Environmental Reclamation Co. v. Hancock* (1984), 16 Ohio App.3d 9, 11, 16 OBR 9, 11, 474 N.E.2d 357, 361.

2. "The elements of the tort of *malicious criminal prosecution* are (1) *malice* in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor on the accused. Arrest of the plaintiff or seizure of his property is not a necessary element." (Emphasis added; citations omitted.) *Trussell v. Gen. Motors Corp.* (1990), 53 Ohio St.3d 142, 559 N.E.2d 732, syllabus.

A review of Mrs. Armbruster's four claims reveals that none of these causes of action falls within any of the second-tier exceptions to blanket immunity granted by the statute. None of these claims involves negligent operation of a motor vehicle (R.C. 2744.02[B][1] ); negligent conduct of a "proprietary function"[5] (R.C. 2744.02[B][2] ); failure to maintain roadways, sidewalks, and other thoroughfares (R.C. 2744.02[B][3] ); negligent injury or loss on the grounds of a governmental property (R.C. 2744.02[B][4] ); or any other liability expressly imposed by another section of the Revised Code (R.C. 2744.02[B][5] ). Mrs. Armbruster does not dispute this conclusion. Instead, she argues that the immunity afforded by R.C. 2744.02 and 2744.03 is inapplicable in this case. Further, she appears to argue that liability may be imposed upon a political subdivision for acts that fall within *either* the R.C. 2744.02(B) exceptions or within any "exception" listed in R.C. 2744.03. Specifically, Mrs. Armbruster asserts that the defendants are liable pursuant to R.C. 2744.03(A)(2).[6] She argues that the defendants' agents, *i.e.*, the officers, were negligent in requesting the issuance of the search warrant in this case, in securing it, and in searching the premises. In support of her proposition that R.C. 2744.03(A)(2) provides an independent basis for liability, she cites *Minnick v. Springfield Local Schools Bd. of Edn.* (1992), 81 Ohio App.3d 545, 611 N.E.2d 926, and *Honeywell, supra.* However, the court finds that these cases are properly distinguishable.

In both cases, the courts adhered to the three-step, immunity/liability analysis of R.C. Chapter 2744. See *Minnick*, 81 Ohio App.3d at 554, 611 N.E.2d at 932; *Honeywell, supra*, at 6–7. Additionally, in both cases, the courts observed that the actions of the political subdivisions or their agents fell within one of the R.C. 2744.02(B) exceptions to immunity. *Minnick*, 81 Ohio App.3d at 553, 611 N.E.2d at 931–932 (R.C. 2744.02[B][4] ); *Honeywell, supra*, at 6–7 (R.C. 2744.02[B][2] ).

---

3. "[T]he elements of [*defamation*] are (1) an unprivileged publication, (2) false and defamatory language about another, and (3) requisite malice." (Emphasis added.) *Tohline v. Cent. Trust Co., N.A.* (1988), 48 Ohio App.3d 280, 284, 549 N.E.2d 1223, 1228.

4. "In the absence of an intervening justification, a person may be found liable for the tort of *false imprisonment* if he or she intentionally continues to confine another despite knowledge that the privilege initially justifying that confinement no longer exists." (Emphasis added.) *Bennett v. Ohio Dept. of Rehab. & Corr.* (1991), 60 Ohio St.3d 107, 573 N.E.2d 633, paragraph one of the syllabus.

5. As discussed above, the provision of police services is a "governmental function."

6. That paragraph reads as follows:
"The political subdivision is immune from liability if the conduct of the employee involved, *other than negligent conduct*, that gave rise to the claim of liability was required by law or authorized by law, or if the conduct of the employee involved that gave rise to the claim of liability was necessary or essential to the exercise of powers of the political subdivision or employee." (Emphasis added.)

Only then did each court proceed to assess the availability of a defense under R.C. 2744.03. *Minnick*, 81 Ohio App.3d at 554, 611 N.E.2d at 932; *Honeywell*, *supra*, at 7. In fact, the *Honeywell* court addressed the applicability of the same paragraph proffered by Mrs. Armbruster in this case, R.C. 2744.03(A)(2). The *Honeywell* court acknowledged that liability under R.C. 2744.02(B) is a prerequisite to the applicability of R.C. 2744.03(A)(2).[7] *Id.* at 6.

The Sixth District Court of Appeals has clearly and regularly followed the three-tier immunity analysis discussed above. See *Fowler v. Williams Cty. Commrs.* (1996), 113 Ohio App.3d 760, 682 N.E.2d 20; *Amborski*, 67 Ohio App.3d at 50–51, 585 N.E.2d at 976–977. In *Amborski*, the court stated:

"Our analysis of R.C. 2744.02 indicates that the intent of the statute was to codify the concept of sovereign immunity * * *. *We find that with the exception of the five situations enumerated in R.C. 2744.02(B), appellee [a governmental subdivision] has blanket statutory immunity from liability for its actions on or after the effective date of the statute.*" (Emphasis added.) *Id.* at 51, 585 N.E.2d at 977.

In *Fowler*, the court also noted that liability of a political subdivision may be based only on an R.C. 2744.02(B) exception. The *Fowler* court described the operation of the immunity statute as follows: "After stating the general rule on sovereign immunity, the statute then lists, under R.C. 2744.02(B), those actions for which a political subdivision will be held liable." Indicative of the Sixth District's adherence to the three-tier immunity analysis can be found in *Adams v. State Farm & Cas.* (Mar. 22, 1991), Lucas App. No. L–90–119, unreported, 1991 WL 38035, where the court reaffirmed the above-cited passage from *Amborski* (liability may be based only on one of the five situations listed in R.C. 2744.02[B]).

In this case, Mrs. Armbruster seeks to wield R.C. 2744.03(A)(2) as a sword, contending that the defendants are liable for the negligent acts of their employees in requesting, obtaining, and executing the search warrant. However, based on the foregoing, the court concludes that the five categories listed in R.C. 2744.02(B) provide the only permissible grounds for imposing liability against a political subdivision. Further, the court finds that the alleged misconduct does

---

7. In that case, defendant village of Metamora sought to avoid liability imposed by R.C. 2744.02(B)(3) (failure to maintain a roadway free from nuisance) for the alleged negligent placement of a stop sign. The village argued that it was entitled to immunity under R.C. 2744.03(A)(2) (conduct of an activity authorized by law). The *Honeywell* court observed that immunity is unavailable under that paragraph when a subdivision's conduct was negligent; the court also observed that the entity could be liable for the *negligent placement* of a stop sign but not the decision to install a stop sign. *Honeywell, supra*, at 10, citing *Winwood v. Dayton* (1988), 37 Ohio St.3d 282, 285, 525 N.E.2d 808, 810–811. The court found that whether the stop sign was negligently placed was a triable issue. *Honeywell, supra*, at 12–13.

not fall within any one of these listed exceptions to immunity. Because the agents' acts did not fall within one of the enumerated R.C. 2744.02(B) exceptions, the court finds that R.C. 2744.03(A)(2) is insufficient to place liability on the village and/or the department. See *Honeywell, supra,* at 7. Accordingly, the village and the department are entitled to judgment as a matter of law.

Because of the result reached on the first issue, the court finds that it need not address the second issue raised by the defendants, that being their entitlement to judgment on the merits of Mrs. Armbruster's causes of action.

## JUDGMENT ENTRY

It is ORDERED that the defendants' motion for summary judgment is granted in favor of the West Unity Police Department and the village of West Unity. It is further ORDERED that the plaintiff's complaint against these defendants is dismissed with prejudice and that plaintiff is ordered to pay court costs assessed herein. The court finds no just reason for delay.

*Judgment accordingly.*